JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff, John Gibboney, appeals the trial court's grant of summary judgment in favor of defendant Allstate Insurance Co. and denial of his motion for summary judgment.
 {¶ 2} Gibboney was employed by Giant Eagle in its warehouse as a "high lift operator" for twenty years. On May 20, 2001, he was injured when he was standing next to his lift as a forklift, driven by defendant Cedric Johnson, crashed into a stationary forklift and pushed it onto Gibboney's foot. As a result, Gibboney was pinned against a pallet. Gibboney's foot was seriously injured. Because Cedric Johnson was operating the forklift in the course and scope of his employment, he was immune from negligence liability pursuant to R.C. 4123.741.
 {¶ 3} Gibboney applied for uninsured motorist coverage from his personal automobile insurance with Allstate. Denying coverage, Allstate claimed that a forklift did not qualify as a motor vehicle under the policy. Gibboney sued for coverage, and, after entertaining each side's motions for summary judgment, the court ruled in favor of Allstate. Gibboney timely appealed, stating two assignments of error, which address the same issue. They state:
I. THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT-APPELLEE ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT.
II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF-APPELLANT JOHN GIBBONEY'S CROSS-MOTION FOR SUMMARY JUDGMENT.
 {¶ 4} The appellate court reviews a summary judgment de novo.Hillyer v. State Farm Mut. Auto Ins. Co. (1996),131 Ohio App.3d 172, 175. The appropriate test for that review is found in Civ.R. 56(C), which states that summary judgment may be granted under the following conditions: first, there is no genuine issue of material fact which remains to be litigated; second, as a matter of law, the moving party is entitled to judgment; and, third, a review of the evidence shows that reasonable minds can reach only one conclusion, which, when that evidence is viewed most favorably to the party against whom the motion was made, is adverse to the nonmoving party. Temple v. Wean (1977),50 Ohio St.2d 317, 327.
 {¶ 5} Initially, the party who seeks summary judgment has the burden of demonstrating the absence of any issue of material fact for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330. Once the moving party has satisfied that initial burden, however, the nonmoving party then has a similar burden of showing that a genuine issue of fact remains for trial. Dresher v. Burt
(1996), 75 Ohio St.2d 280. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
Definition of a "Motor Vehicle"
 {¶ 6} Because this accident occurred in May 2001, we apply the law as it existed at that time. Then, R.C. 3937.18, the uninsured motorist statute, did not define the term "motor vehicle."
 {¶ 7} "The absence of a definition of `motor vehicles' in R.C. 3937.18 and conflicting definitions of the term elsewhere in the Revised Code and in dictionaries of general usage create an ambiguity as to the meaning of the term `motor vehicle' in this context. Ambiguity in a statute should be resolved by examining the legislative intent of the statute." Delli Bovi, Exr. v.Pacific Indemnity Co. (1999), 85 Ohio St.3d 343, 345. In order to supply a definition for this statute, the Ohio Supreme Court ruled that the definition of "motor vehicle" as found in R.C.4511.01(B) applied to R.C. 3937.18 cases.[1] Id. In its list of excluded vehicles, the statute does not mention a forklift.
 {¶ 8} At the time of the accident, R.C. 4511.01(B) defined a motor vehicle as:
(B) "Motor vehicle" means every vehicle propelled or drawn bypower other than muscular power or power collected from overheadelectric trolley wires, except motorized bicycles, road rollers, traction engines, power shovels, power cranes, and other equipment used in construction work and not designed for or employed in general highway transportation, hole-digging machinery, well-drilling machinery, ditch-digging machinery, farm machinery, trailers used to transport agricultural produce or agricultural production materials between a local place of storage or supply and the farm when drawn or towed on a street or highway at a speed of twenty-five miles per hour or less, threshing machinery, hay-baling machinery, agricultural tractors and machinery used in the production of horticultural, floricultural, agricultural, and vegetable products, and trailers designed and used exclusively to transport a boat between a place of storage and a marina, or in and around a marina, when drawn or towed on a street or highway for a distance of no more than ten miles and at a speed of twenty-five miles per hour or less.
(Emphasis added.) R.C. 4511.01(B).
 {¶ 9} When faced with the same question, the Tenth Appellate District held that a forklift qualified as a motor vehicle for the purpose of the uninsured motorists statute. Drake-Lassie v.State Farm Ins. Co. (1998), 129 Ohio App.3d 781, 788. TheDrake-Lassie court stated:
* * * applying the definition set forth in R.C. 4501.01, we find that the forklift that injured appellant falls within the definition of "motor vehicle." The vehicle operates on wheels and is propelled by power other than muscular power or power collected from an overhead electric trolley wire. The forklift does not fall within any of the exceptions set forth in the statute. Inasmuch as the forklift is a motor vehicle, pursuant toAdy the provision in State Farm's policy which seeks to exclude coverage because the forklift was designed mainly for use off public roads is invalid.
Id. at 788.
 {¶ 13} However, as Judge Dreshler cautioned in his concurring opinion:
We are left with a statute that does not literally include or exclude a forklift, but by other wording and case law interpretations, leads us to a conclusion that a forklift is a motor vehicle. The conclusion is compelled within the context of uninsured motorist coverage, which in my view was never contemplated to apply to forklifts. * * * In my opinion, the legislature should address with more preciseness the definition of motor vehicle in the context of uninsured motorist protection. Such an endeavor would benefit all litigants and trial courts in Ohio.
Id. at 789-790.
 {¶ 14} In a subsequent decision, this court agreed that the forklift that was the subject in Drake could not have "qualified under the `other equipment used in construction' exception." Chase v. Westfield Insurance Co., Cuyahoga App. No. 80770, 2002-Ohio-5471, ¶ 25, appeal denied, 98 Ohio St.3d 1479. In fact, "neither party claimed that the forklift constituted construction equipment * * *." As the Chase court noted, the question revolves around whether "a forklift fit[s] within any of the 14 exceptions to the definition of a motor vehicle." Id. Those exceptions include motorized bicycles, anything powered by muscle or by an electric overhead trolley wire, road rollers, traction engines, power shovels, power cranes, and otherconstruction equipment "not designed or employed in generalhighway construction." In Chase, this court emphasized that the statute applies that limitation only to construction equipment. A forklift is not used in highway construction: it is designed to move pallets of merchandise or equipment from one place to another in a warehouse. A forklift is not used in laying road bed, mixing concrete, rolling the road, or any other part of constructing a highway. It might be used to move construction items around in a warehouse or onto a truck, but it is no more used in construction than a grocery bag is used in cooking.
 {¶ 15} It is axiomatic that a court, in applying a statute, must take the statute at face value. The * * * court "must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may notbe restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used."Weaver v. Edwin Shaw Hosp (2004), 104 Ohio St.3d 390, ¶ 13, quoting Wachendorf v. Shaver (1948), 149 Ohio St. 231, paragraph five of the syllabus.
 {¶ 16} "In construing a statute, a court's paramount concern is the legislative intent in enacting the statute." State exrel. Richard v. Bd. of Trustees of Police Firemen's Disability Pension Fund (1994), 69 Ohio St.3d 409, 411, 632 N.E.2d 1292,1295. To this end, we must first look to the statutory language and the "`purpose to be accomplished.'" Id. In assessing the language employed by the General Assembly, the court must take words at their usual, normal, or customary meaning. Id. at 412,632 N.E.2d at 1295. Most important, it is the court's duty to "give effect to the words used [and to refrain from] insertingwords not used." Id. Rice v. CertainTeed Corp (1999),84 Ohio St.3d 417, 419, emphasis added. "Forklift" is not listed in the statute as one of the many exceptions articulated, nor does it fit under the broadly defined exception. We should, therefore, refrain from adding it to the statute.
 {¶ 17} The Ohio Supreme Court has, however, limited the definition of motor vehicles to land vehicles, specifically, vehicles that "can be used for transportation on the highway." Thus the Ohio Supreme Court, excluding a helicopter from coverage, held that "insurance providers may contractually limit UIM coverage to motorized land vehicles." Delli-Bovi v. PacificIndemnity Co. (1999), 85 Ohio St.3d 343, 345-346, emphasis added.
 {¶ 18} The forklift in the case at bar differs from the helicopter excluded by the Supreme Court in Delli-Bovi: while not designed for highway use, a forklift nonetheless can be driven on a highway. In a multiple warehouse complex, a forklift can be driven from one warehouse to another on the same road cars and trucks travel. In Delli-Bovi, on the other hand, the excluded vehicle was a helicopter. While helicopters have the ability to travel in three dimensions, they cannot be driven on the road in the same manner as a car, truck, or forklift. We conclude, therefore, that in excluding a primarily air borne vehicle such as a helicopter, the Supreme Court was not opening the door to further exclude certain types of motorized land vehicles such as a forklift.
 {¶ 19} Although a subsequent version of the uninsured motorist statute did expressly exclude forklifts from the uninsured motorist statute, the law at the time of the accident in the case at bar occurred did not exclude a forklift as a motor vehicle. Therefore the statute required coverage for an accident involving a forklift that did not, as here, fit the statutory exceptions.
Whether Insurers Can Further Narrow the Definition
 {¶ 20} Nor did the Ohio Supreme Court indicate that the insurance providers could place any limits beyond "motorized land vehicles." Allstate's policy, however, limited coverage to a narrower definition of a "motor vehicle": "a land motor vehicle designed for use on roads." The contract further contained another limitation under the definitions in the uninsured motorists section of the contract. A "`Motor Vehicle' means a land motor vehicle or trailer other than: (a) a vehicle or other equipment designed for use off public roads, while not on public roads * * *."
 {¶ 21} Ordinarily, the terms of a contract are found within the four corners of the document. When, as here, certain terms of the contract are statutorily mandated, however, the statute takes precedence over the contract. In interpreting a case involving a policy intended to exclude motorcycles, for example, from uninsured motorist coverage at the time this version of the statute was in effect, the Ohio Supreme Court ruled:
 {¶ 22} The law in Ohio is that "[a]ny contractual restriction on the coverage mandated by R.C. 3937.18 must comply with the purpose of this statute. * * *" Ady v. West American Ins. Co.
(1982), 63 Ohio St.2d 593, 23 O.O.3d 495, 433 N.E.2d 547, syllabus. In order to conclude that the exclusion in the present case complies with the purpose of R.C. 3937.18, one must determine that a motorcycle does not constitute a "motor vehicle" under the statute. Stated otherwise, if a motorcycle is indeed a motor vehicle, then R.C. 3937.18 is applicable to motorcycles. As such, a policy exclusion for motorcycles violates the mandates of R.C. 3937.18, and does not comport with the purpose of the statute. Horsley v. United Ohio Insurance Co. (1991),58 Ohio St.3d 44, 45-46.
 {¶ 23} Similarly here, because R.C. 4511.01 and 4501.01 did not expressly exclude a forklift and because a forklift is not excluded under the statutory definition of a motor vehicle, the more restrictive language of the insurance contract cannot serve to limit the application of the contract to prevent coverage for a motor vehicle. See Metropolitan Property Liability Co. v.Kott (1980), 62 Ohio St.2d 114, holding that a snowmobile is a motor vehicle pursuant to the statute. On the question of whether an insurer could limit coverage beyond the terms of the statute, the statute as it existed in 1980 remained the same at the time of Gibboney's accident. The Metropolitan case remained, therefore, good law at the time of the accident. Although five months later the legislature amended the statute to expressly allow insurers to contractually limit the meaning of "motor vehicle," the law as it existed at the time of Gibboney's injury required insurers to cover any vehicle meeting the statutory definition.
 {¶ 24} The trial court erred, therefore, in ruling that a forklift, in May 2001, was not a "motor vehicle" under the definition of the uninsured motorists statute. Insurers were, moreover, precluded at that time, from limiting that definition in their contracts.
Other Owned Auto
 {¶ 25} The parties also raise a second issue: if the pallet truck/forklift does qualify as a motor vehicle under the statute, does Gibboney's regular use of those pallet truck/forklifts preclude coverage under the "other owned auto exclusion?" The insurance contract limits the definition of uninsured auto as follows:
An Uninsured Auto Is Not:
* * *
a motor vehicle owned by, furnished to, or available for the regular use of the insured person * * *.
Amendment of Policy Provisions-Ohio, at 12.
 {¶ 26} Allstate argues that pursuant to this provision Gibboney is not entitled to uninsured motorist coverage, because his insurance contract specifically excluded coverage for an injury incurred "when struck by a vehicle * * * available or furnished for the regular use of [the policy holder] * * * which is not insured for this coverage." According to Allstate, because Gibboney regularly used his employer's pallet truck/forklifts, the one that struck him was "furnished to, or available for" his "regular use." Allstate also argues that because Gibboney's job entailed operating whatever equipment his employer requested, including forklifts, the forklift that struck him qualifies as a vehicle furnished for his regular use.
 {¶ 27} Allstate proceeds to contradict its own assertion, however, when it states in its brief that "although he does not routinely operate lifts like the one that struck him, he is occasionally asked to do so." Appellee's Brief at 9. Allstate fails to explain how "occasionally" equates with "regular use" as specified in the policy.
 {¶ 28} In his deposition, Gibboney distinguished the difference between the vehicle that struck him and the one he has operated for twenty years: the vehicle that struck him was "not a high lift like I operate, it's more like a forklift." Deposition of John Gibboney at 14. Gibboney also emphasized that he operated forklifts of the type that injured him "[n]ot routinely, not at all — not at all routinely." Deposition at 15. He said that he is "occasionally" asked to operate a forklift. He also testified that the facility has over 100 lifts of various types, both high lifts and forklifts. Tr. 16.
 {¶ 29} Allstate presented no evidence to support its claim that the forklift that hit Gibboney was a vehicle he had ever operated, much less one that was furnished to or regularly available to him for his regular use. In fact, Allstate concedes that Gibboney does not routinely use or drive the type of forklift that hit him. The exclusion contained in the insurance contract, therefore, does not operate to preclude coverage for the forklift accident.
 {¶ 30} Moreover, because a forklift is properly considered a motor vehicle under the version of the statute in effect at the time of the accident, Gibboney is entitled to uninsured motorist coverage under his Allstate policy of insurance. The trial court erred, therefore, when it granted Allstate's motion for summary judgment and denied Gibboney's motion for summary judgment.
 {¶ 31} Accordingly, the judgment in favor of Allstate is reversed and the case remanded for entry of judgment in favor of Gibboney.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Colleen Conway Cooney, P.J. and Sean C. Gallagher, J., concur.
[1] R.C. 4501.01 contains the same definition for "motor vehicle" with slight grammatical changes.